**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
Mark T. Baller (SBN 261331)
mark@texasinjurylaw.com
3175 Monterey Blvd
Oakland, CA, 94602-3560
Phone: (510) 531-4529
Fax:    (510) 531-4377

**SEEGER WEISS LLP**
Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
Miriam L. Schimmel (SBN 185089)
mschimmel@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax     (215) 851-8029

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 654-5988

Attorneys for Plaintiffs and all others similarly situated.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOROTHY PERALTA, STEVEN S. BIGVERDI and JAMES MOSCOSO, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC. f/k/a AMERICAS WHOLESALE LENDER, COUNTRYWIDE HOME LOANS, INC., and COUNTRYWIDE BANK, FSB; and DOES 1 through 200, inclusive,<br><br>Defendants. | **CASE NO.  3:09-cv-03288-JL**<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND TO STATE COURT**<br><br>Hearing Date: September 16, 2009<br>Time:            9:30 a.m.<br>Place:           Courtroom F<br>Judge:          Hon. James Larson<br><br>Complaint filed:    June 2, 2009<br>Removal filed:      July 21, 2009 |

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    **Standard On Motion to Remand: "Removal Statutes Are Strictly Construed Against Removal", And Defendants Have The Burden of Showing That Removal Was Proper** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    **This Court Does Not Have Jurisdiction over Plaintiffs' State Law Claims Through Diversity of Citizenship Pursuant to 28 U.S.C. § 1332** . . . . . . . . . . . . . . 3

        1.    **Countrywide Bank's Citizenship of Convenience** . . . . . . . . . . . . . . . . . . . . . . . 3

        2.    **Countrywide's Transactional Smoke and Mirrors** . . . . . . . . . . . . . . . . . . . . . 5

        3.    **Countrywide Failed to Carry its Burden for Removal** . . . . . . . . . . . . . . . . . 8

        4.    **Defendants Have Produced No Credible Documentation Showing That Countrywide Bank Is Anything Other than a Wholly Owned Subsidiary** . . 10

        5.    **Under the "Place of Operations" and "Nerve Center" Tests, Defendants are Citizens of California** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            a.    Defendants are Citizens of California When Applying the Place of Operations Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                (1)    Location of Tangible Property . . . . . . . . . . . . . . . . . . . . . . . . . 12

                (2)    Location of Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        6.    **To the Extent That It Is Relevant, Under the "Place of Operations" Test, Bank of America is also a Resident of California**

            c.    Sources of Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            d.    Location of Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            e.    Location of Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        7.    **Under the Nerve Center Test Defendants Are Residents of California** . . . . 16

    C.    **CAFA's "Local Controversy" Exception Bars Any Finding of Federal Jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.    **Defendants Do Not Come Close to Establishing Federal Question Jurisdiction** . . . 18

        1.    **Defendants' Complete Preemption Arguments are Patently Baseless** . . . . . 18

        2.    **Defendants' Complete Preemption Argument Under TILA Also Has No Merit** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**3.**      **Any Federal Issues Implicated by Defendants' Preemption Defenses Can Be Decided by the California State Courts on Remand** . . . . . . . . . . . . 24

**E.**      **Defendants' Removal Was Not "Objectively Reasonable."  Plaintiff Requests An Award Of Attorney Fees In The Amount Of $ 20,000** . . . . . . . . . . . . . . . . . . . . . 25

**IV.**    **CONCLUSION**   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page(s)</u>

3 **<u>FEDERAL CASES</u>**

4
5
*Arco Environmental Remediation, L.L.C. v. Dept. of Health & Envtl. Quality*,
    213 F.3d 1108 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6 *Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 20, 21
7
8 *Breitman v. May Co. California*,
    37 F.3d 562 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9 *Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 25
10
*Chick Kam Choo v. Exxon Corp.*,
11    486 U.S. 140 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

12 *Circle Ind's USA, Inc. v. Parke Const. Group, Inc.*,
    183 F.3d 105 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
13
*Cuomo v. The Clearing House Ass'n, LLC*,
14    129 S. Ct. 2710 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

15 *Davis v. HSBC Bank Nevada NEVADA, N.A.*,
    557 F.3d 1026 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
16
17 *Duncan v. Stuetzle*,
    76 F.3d 1480 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 14

18 *Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
19
20 *General Elec. Capital Auto Lease, Inc. v. Mires*,
    788 F.Supp. 948 (E.D. Mich. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

21 *Ghaderi v. United Airlines, Inc.*,
    136 F.Supp.2d 1041 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 11, 16
22
*Glazier & Associates, P.C. v. Teleport, Inc.*,
23    No. Civ.01-1080-ST, 2001 WL 34041792 (D. Or. Sept.13, 2001) . . . . . . . . . . . . . . . . . . . 5, 10

24 *Great North Ry. Co. v. Alexander*,
    246 U.S. 276 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
25
*Industrial Tectonics v. Aero Alloy*,
26    912 F.2d 1090 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12, 16

27 *In re Ferrell*,
    358 B.R. 777 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
28

iv

*In re First Alliance Mortg. Co.*,
    280 B.R. 246 (Bankr. C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jackson v. Bank One*,
    952 F. Supp. 734 (M.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Knapp v. Americredit Fin. Serv's*,
    245 F.Supp.2d 841 (S.D. W.Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Korn v. Polo Ralph Lauren Corp.*,
    536 F.Supp.2d 1199 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Magee v. Exxon Corp.*,
    135 F.3d 599 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Mann v. City of Tucson, Dept. of Police*
    782 F.2d 790 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Martinez v. Wells Fargo Bank, N.A.*,
    No. C-06-3327 RMW, 2007 WL 2213216 (N.D. Cal. July 31, 2007) . . . . . . . . . . . . . . . . . . 19

*McCabe v. General Foods Corp.*,
    811 F.2d 1336 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Merrell Dow Pharm's, Inc. v. Thompson*,
    478 U.S. 804 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Morongo Band of Mission Indians v. California State Bd. Of Equalization*,
    858 F.2d 1376 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mount v. Wells Fargo Bank, N.A.*,
    No. CV 08-6298 GAF (MANx), 2008 WL 5046286 (C.D Cal. Nov. 24, 2008) . . . . . . . . 10, 11

*Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*,
    138 F.3d 160 (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Libhart v. Santa Monica Dairy Co.*,
    592 F.2d 1062 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Piazza v. EMPI, Inc.*,
    No. 1:07-cv-00954-OWW-GSA, 2008 WL 590494 (E.D. Cal. Feb. 29, 2008) . . . . . . . . . . . . 16

*Plascencia v. Lending 1st Mortgage*,
    583 F.Supp.2d 1090 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Shamrock Oil & Gas Corp. v. Sheets*,
   313 U.S. 100 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Southern Pac. Co. v. Haight*,
   126 F.2d 900 (9th Cir.1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strotek Corp. v Air Transport Assoc. of Am.*,
   300 F.3d 1129 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*The Fair v. Kohler Die & Specialty Co.*,
   228 U.S. 22 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tosco Corp. v. Communities for a Better Env't*,
   236 F.3d 495 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
   860 F.2d 1 (1st Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Watters v. Wachovia Bank, N.A.*,
   550 U.S. 1 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wells Fargo Bank, N.A. v. Boutris*,
   419 F.3d 949 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wells Fargo Bank West, Nat'l Ass'n v. Burns*,
   No. 03-3501, 2004 WL 1253281 (8th Cir. June 9, 2004) (unpublished op.) . . . . . . . . . . . . . . 22

*Williams v. First Gov't Mortgage & Investors Corp.*,
   176 F.3d 497 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wisconsin Dep't of Corrections v. Schacht*,
   524 U.S. 381 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wyeth v. Levine*,
   129 S. Ct. 1187 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


## **FEDERAL STATUTES**

12 U.S.C. §§ 1461 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15 U.S.C. §§ 1601 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15 U.S.C. § 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 10, 17

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 20

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25

**FEDERAL RULES**

FED. R. CIV.PRO. 7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**FEDERAL REGULATIONS**

12 C.F.R. § 34.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

12 C.F.R. § 560, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Comment, 16 C.F.R. § 226.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Defendants assert both diversity and federal question jurisdiction under 28 U.S.C. §§ 1331, 1332(d), and 1441(a).  Although Defendants claim in their petition that removal is proper here, they have failed to produce any evidence that supports removal on either diversity or federal question grounds.  Instead, as will be shown below, the record demonstrates that Defendants have made different claims in different states before different courts, primarily dependent upon the litigation position they sought to advance. Any reasoned analysis in this case necessarily leads to the conclusion that Defendants have failed to meet their burden of establishing a basis for federal jurisdiction.

There is no diversity jurisdiction under § 1332(d), because all Class members and Defendants are citizens of California.   Countrywide Bank's claim of Colorado citizenship here is belied by its claims in other cases filed in 2009 of citizenship in California based on its principal place of business in Calabasas. Moreover, there is abundant evidence showing that the Countrywide Defendants remain distinct entities with their principal places of business in California.  Indeed, despite Countrywide's arguments, not a scintilla of evidence exists showing that Countrywide Bank merged with Bank of America prior to removal. To the contrary, Countrywide Bank (as well as Countrywide Home Loans) still exist under the Countrywide Financial Corporation umbrella, all of which are headquartered in Calabasas, California.[1]  Defendants' diversity jurisdiction arguments thus fails.

Nor can Defendants establish federal question jurisdiction.  Defendants recognize, as they must, that Plaintiffs have only asserted California state-law claims, but nevertheless they try to manufacture federal question jurisdiction based on the rarely cited and inapplicable doctrine of "complete preemption." Defendants do not and cannot show that Congress in either the National Bank Act, the Home Owners Loan Act, or the Truth In Lending Act created an exclusive federal cause of action for consumer fraud based on deceptive and predatory mortgage lending practices.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("*Beneficial*") ("In the two categories of cases where this Court has found complete preemption,

---

[1]   *See* Countrywide Financial Corporation's 2006 Form 10-K, Arbogast Decl. Ex., 1; *see also* Cal. Sec. State Printout, Arbogast Decl., Ex. 2; *see also* Notice of Removal, fn 1, pg. 1 (CHL and CHL f/k/a America's Wholesale Lender are one and the same with its principal place of business in Calabasas, California).

. . . the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.").  Absent any evidence even remotely supporting Congressionally mandated exclusive jurisdiction, Defendants' removal arguments based on federal question jurisdiction must fail.

## II.    ARGUMENT

### A.    Standard On Motion to Remand: "Removal Statutes Are Strictly Construed Against Removal", And Defendants Have The Burden of Showing That Removal Was Proper

In determining whether removal jurisdiction exists, it is a bedrock principal that courts construe their jurisdiction *narrowly, against removal. Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941). The Ninth Circuit adheres to that principal, as it has explained  that "removal statutes are ***strictly construed against removal*****.**"  *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) (emphasis added).  The "defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "[F]ederal jurisdiction 'must be rejected if there is any doubt as to the right of removal in the first instance.'" *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)(internal citations omitted).

This strict construction against removal supports the clearly articulated public policy behind removal that was summarized by this Court in *Ghaderi v. United Airlines, Inc.*:

> We must honor the following policies....
>
> •       Public policy ***favors allowing state courts to adjudicate state law claims***: The diversity statute is to be strictly construed against intruding on the rights of the states to decide their own controversies.
>
> •       Public policy ***favors reducing the federal courts' diversity case load*** in favor of allowing states to resolve their controversies when it is appropriate to do so: Federal courts are courts of limited jurisdiction. Accordingly, courts should strictly construe the removal statute. There is a presumption against removal and federal courts must reject jurisdiction if there is doubt about the right of removal in the first instance.
>
> •       The ***primary purpose of the diversity statute is to avoid prejudice against "outsiders." Parties who have a great deal of contact with the public in a particular state are not likely to be considered outsiders and, therefore, are not likely to be victims of discrimination by "locals."***
>
> These policies must drive doubt resolution in this context. Each directs us to remand, where appropriate.

136 F.Supp.2d 1041, 1047 (N.D. Cal. 2001).

**B.    This Court Does Not Have Jurisdiction over Plaintiffs' State Law Claims Through Diversity of Citizenship Pursuant to 28 U.S.C. § 1332**

Given that Plaintiffs and all the putative Class Members are citizens of California,[2] the only determination that this Court need make is as to the citizenship of Defendant Countrywide Bank, FSB ("Countrywide Bank").[3] FAC ¶¶ 2-4, 15 and 52.  Demonstrating this is Defendants' burden. *Industrial Tectonics v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts.")  In order to meet this burden,  Countrywide Bank maintains that diversity jurisdiction exists since it allegedly moved its headquarters from Alexandria, Virginia to Centennial, Colorado and supposedly has its principal place of business in Colorado (Ntc. of Removal, 6:3-11).  However, Plaintiffs challenge these jurisdictional facts proffered by Defendants.[4]

**1.    Countrywide Bank's "Citizenship of Convenience"**

In its Notice of Removal here, Countrywide claims that its "home office" and therefore its citizenship is Colorado.  Notice of Removal ¶ 19.  Countrywide claims that this has been true "as of February 4, 2009, and thereafter."  *Id.*

However, Countrywide is judicially estopped from making such a claim.[5]  Since February 4, 2009, Countrywide has claimed an entirely different citizenship in other litigation.  On February 11, 2009, Countrywide Bank, FSB filed a Corporate Disclosure Statement in another action that is substantially the

---

[2]   Plaintiffs and thousands of similarly situated California citizens have brought claims under California law arising out of Defendants' misleading and deceptive Adjustable Rate Mortgages ARM loans.  *See* First Amended Class Action Complaint ("FAC") ¶¶ 1-51.  In particular, Plaintiffs' class claims seek to redress Defendants' failure to disclose important material facts to borrowers before they entered into the subject loan contracts with Defendants.  *See* FAC ¶¶ 2-4, 15 and 52.

[3]   On or about April 17, 2009, Countrywide Bank, FSB, applied to convert from a federal savings bank ("FSB"), to a national bank or national association ("N.A.").  Permission was granted on or about April 23, 2009.  *See* Arbogast Decl., Ex. 3.

[4] A motion to remand is the proper vehicle for challenging an improper removal.  *See Arco Environmental Remediation, L.L.C. v. Dept. of Health & Envtl. Quality*, 213 F.3d 1108, 1111-1114 (9th Cir. 2000); *see also* 28 U.S.C. § 1447(c).

[5]   Judicial estoppel is an equitable doctrine intended to protect litigants and the courts from the abuses and prejudices that can result from a party's reliance on contradictory assertions.  *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001) (summarizing general purposes of the doctrine and recognizing that the circumstances under which it may be applied are not reducible to general formulation).  Among the factors to consider in applying the doctrine are whether a party's later position is "clearly inconsistent" with its prior position, whether judicial acceptance of the later position would create "the perception that either the first or second court was misled," and "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-751.

---

3

same as its Corporate Disclosure in this case.  It states:

> (2) Countryside Bank, FSB *is* a wholly owned subsidiary of Countrywide Financial Corporation.  No publicly held company owns 10% or more of Countrywide Bank, FSB stock.
> (3) Countrywide Home Loans, Inc. *is* a wholly owned subsidiary of Countrywide Financial Corporation.  No publicly held company owns 10% or more of Countrywide Home Loans, Inc. stock.[6]

*See* Corporate Disclosure Statement (*Weber*), Arbogast Decl., Ex. 4, (emphasis added).  However, unlike here, where it claims Colorado as its state of citizenship, Countrywide Bank stated in *Weber* that it continued to be a citizen of **California** because California remains the principal place of business for all of the relevant Countrywide entities:

> 28.  Defendant Countrywide Financial Corporation is a Delaware corporation, with its principal place of business in ***Calabasas, California***.

> **29.  Defendant Countrywide Bank, FSB is a federal savings bank with its principal place of business in Calabasas, California.**

> 30.  Defendant Countrywide Home Loans, Inc. is a Delaware corporation, with its principal place of business in ***Calabasas, California***.

Notice of Removal (*Weber*), filed February 11, 2009, Arbogast Decl. Ex. 5, (emphasis added).

The ambiguity created by Countrywide Bank's vague statement in this case regarding its citizenship and its representations in *Weber* (after February 4) is, by itself, sufficient to defeat removal since Defendants fail to carry their burden of proof.  Moreover, taken together, these statements more clearly show that, as Plaintiffs have maintained, both Countrywide Defendants continue to maintain their principal place of business in California.[7]

---

[6]  Defendants' Corporate Disclosure Statement here states:

> Pursuant to FED. R. CIV. PRO. 7.1, defendants Countrywide Home Loans, Inc. f/k/a Americas Wholesale Lender, Countrywide Home Loans, Inc. (together with Countrywide Home Loans, Inc. f/k/a Americas Wholesale Lender, "CHL") and Countrywide Bank, FSB ("Countrywide Bank"), hereby disclose that (a) Bank of America Corporation ("BAC"), a publicly-held corporation, is the ultimate parent corporation of CHL; (b) Countrywide Bank *is* an indirect subsidiary of Countrywide Financial Corporation ("CFC"); (c) CFC *is* a wholly-owned subsidiary of BAC; and (d) no publicly-held corporations other than BAC own 10% or more of CHL's or Countrywide Bank's stock.

[7]   In another recent case brought in state court in Colorado, Countrywide Bank sought removal based on diversity jurisdiction, arguing that it was **never** incorporated in nor did it have its principal place of business in Colorado.  On July 17, 2009, in an effort to create diversity jurisdiction for purposes of removing a Colorado state court case to federal court, Countrywide Bank, FSB, made the following representation:

Plaintiffs' Motion for Remand - 3:09-cv-03288-JL

1   Moreover, recently on March 18, 2009, a full month after Countrywide now claims to have moved

2   its "home office" to Colorado, Countrywide Bank and CHL filed suit in the California state court system.

3   *See* Complaint (*Countrywide*), Arbogast Decl., Ex. 6.  In response to the removal of that case, Countrywide

4   Bank and the other Countrywide defendants moved to remand it back to the state court.  *See* Motion to

5   Remand (*Countrywide*), filed June 1, 2009, Arbogast Decl., Ex.  7.  Clearly, Countrywide Bank does not

6   fear treatment as an "outsider" in the California courts.  Given that the "primary purpose of the diversity

7   statute is to avoid prejudice against 'outsiders'", *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d at 1047,

8   Countrywide's assertions here based upon the diversity statute is hypocritical to say the least.

9                           **2.    Countrywide's Transactional Smoke and Mirrors**

10   It is well settled that "**[a] subsidiary's citizenship remains separate from its parent corporation**

11   **for the purpose of diversity jurisdiction**." *Glazier & Associates, P.C. v. Teleport, Inc.*, No.

12   Civ.01-1080-ST, 2001 WL 34041792, at \*2 (D. Or. Sept.13, 2001) (citing *Nauru Phosphate Royalties, Inc.*

13   *v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir.1998) and *U.S.I. Props. Corp. v. M.D. Constr. Co.*,

14   860 F.2d 1, 7 (1st Cir.1988)); *see also Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir.1994)

15   (recognizing the "general rule" that a subsidiary's citizenship is determined without reference to that of its

16   parent corporation, but declining to extend the rule to a mere "division" of a corporation).

17   Here, Countrywide Bank attempts to take advantage of its recent transactional maneuvers as a result

18   of Bank of America's acquisition of the various Countrywide entities.  Apparently, it believes that these

19   corporate maneuvers can effectively hide the fact that at all times relevant to this inquiry, it was and is a

20   citizen of California, continuing to operate its business of mortgage lending from the State of California.

21   Although Plaintiffs will outline the transactional history, the fundamental conclusion is that CHL and

22   footnote 7, cont..

23

24       4. Plaintiff is a citizen of the State of Colorado. Complaint, p. 1 ¶ 2. Countrywide Bank, FSB is
         now part of Bank of America, N.A, which has its principal place of business in North Carolina.
         ***Before it became part of Bank of America, N.A., Countrywide Bank, FSB, neither its place of***
25       ***incorporation, nor its principal place of business was located in Colorado.***  Bank of America,
         N.A., is a national banking association with its principal place of business in North Carolina.
26       BAC Home Loans Services, LLP, is a Texas limited partnership with its principal place of
         business in Texas. Therefore, all Defendants have diversity of citizenship with respect to Plaintiff.

27

28   *See* Notice of Removal (*Svenby*), filed July 17, 2009, Arbogast Decl., Ex. 8.  In *Svenby*, of course, Countrywide
     Bank did not identify its citizenship, but there it clearly *denied being a citizen of Colorado.*

                                                5

1   Countrywide Bank remain distinct subsidiaries under the Countrywide Financial Corporation umbrella.

2   While Bank of America might have acquired ownership of Countrywide Financial Corporation, the inquiry

3   after Bank of America's acquisition is no different than it was before the acquisition: (1) CHL and

4   Countrywide Bank are distinct corporations separate and apart from Bank of America; and (2) CHL and

5   Countrywide Bank are citizens of California with their principal place of business in California.

6       Since Bank of America announced its intent to "acquire" Countrywide Financial Corp., the parent

7   company to both CHL and Countrywide Bank, in January 2008 ; *see* Press Release entitled "Bank of

8   America Agrees to Purchase Countrywide Financial Corp", (Arbogast Decl., Ex. 10),  there have been a

9   number of transactions, none of which has served either to dissolve CHL or Countrywide Bank, or to change

10  their citizenship.   An overview of the known transactional history between Bank of America and the

11  Countrywide entities follows:

12  •   Countrywide Home Loans and Countrywide Home Loans Inc. (fka America's Wholesale
13      Lender) were wholly owned subsidiaries of Countywide Financial Corp., a publically traded
        company.

14  •   Countrywide Bank FSB, was a federal Savings Bank, under the supervision of the Office of
        Thrift Supervision, and was also a wholly owned subsidiary of Countywide Financial Corp.
15

16  •   On January 11, 2008, Countrywide Financial Corporation entered into an agreement with
        Bank of America to be purchased.  Pursuant to that agreement Red Oak Merger Corporation,
17      a wholly owned subsidiary of Bank of America Corporation, would acquire Countrywide
        Financial Corporation.

18  •   On July 1, 2008, Red Oak Merger Corporation and Countrywide Financial Corporation
        merged, with Red Oak Merger Corporation being the surviving entity, with Red Oak Merger
19      Corporation changing its name to Countrywide Financial Corp.

20  •   On April 17, 2009, Countrywide Bank, FSB filed an application with the Office of the
        Comptroller of the Currency ("OCC") to convert to Countrywide Bank NA (CWBNA).
21

22  •   Also on April 17, 2009 BANA (Bank of America NA) filed an application with the OCC to
        acquire CWBNA by merger.

23  •   On April 23, 2009, the OCC granted approval for CWBNA to merge with BANA.  A six
        month time period to complete the transaction was granted.  In granting the request,  the
24      **OCC noted that CWBNA would be an indirect, wholly-owned subsidiary of BANA**.

25  *See* Conditional Approval #900, (Arbogast Decl., Ex. 11)

26      The OCC's conditional approval for the acquisition was granted in Office of the Comptroller of the

27  Currency Conditional Approval #900 ("OCC CA-900 "), Arbogast Decl., Ex. 11.  As part of the approval,

28  OCC found that BANA had no branches in Colorado (*id*. at p.2, n.3) and that Countrywide Bank FSB only

has a branch in Texas and one in Virginia. *Id.* at p.2.   The approval documents state that Defendants intended to use the Countrywide main office in Colorado as a branch.   However, the Colorado Banking Board found that neither Countrywide Bank, a Federal Savings Bank (CWFSB), nor its anticipated successor CWBNA is a ***functional depository financial institution with a principal place of business in Colorado; and that the operations of CWFSB/CWBNA are not principally conducted in Colorado.*** *Id.* at p.7, n.26 (emphasis added). *see* also the Department of Regulatory Agency of Colorado Banking Division letter finding no Colorado connection, dated April 16, 2009 (Arbogast Decl., Ex. 27).

In fact, Defendants have not provided any evidence that these mergers have even been fully consummated.   The OCC gave Bank of America "six months to consummate the conversions and mergers from the date of this decision.  The conditional approval will automatically terminate unless the OCC grants an extension of the time period."   Conditional Approval #900 ("OCC CA-900 "), Arbogast Decl., Ex. 11. at p. 14.   Only two months have passed since the approval was granted and at minimum until such approval it is clear that Countrywide Bank continues as a separate entity. *See* Delaware Certificate of Good Standing, dated August 4, 2009, Arbogast Decl. Ex.12.

Indeed, Countrywide Bank itself recently denied that Bank of America is its successor in interest or that Bank of America "acquired" Countrywide:

> 97.   In response to the allegations contained in the first sentence of Paragraph 97, Countrywide admits only that CW Bank, FSB, formerly known as Countrywide Bank, N.A., which was merged with and into Bank of America, N.A., was a federally chartered savings bank (headquartered in Colorado and previously headquartered in Virginia).

> 98.   In response to the allegations contained in the first sentence of Paragraph 98, *Countrywide admits only that CHL is a New York corporation **with headquarters in California***. In response to the allegations contained in the second sentence of Paragraph 98, Countrywide admits only that CHL is a subsidiary of CFC, and that it engaged in the origination of residential mortgage loans.

> 105.  Countrywide admits only that BAC is a Delaware corporation with headquarters in North Carolina and that ***CFC was acquired by a subsidiary of BAC*** through a transaction that closed on July 1, 2008.  Further responding, ***Countrywide specifically denies that BAC is "Countrywide's successor-in-interest."***

> 111.   In response to the allegations contained in the first sentence of Paragraph 111, Countrywide admits only that in some but not all calendar years prior to July 1, 2008, it had hundreds of billions of dollars in loan production each year and a residential mortgage servicing portfolio in excess of $1 trillion. Further responding to the allegations contained in the first sentence of Paragraph 111, ***Countrywide specifically denies that BAC "acquired" Countrywide.***

7

1   *See* Defendants' Answer (MDL No. 1988 (S.D. Cal.), filed June 17, 2009 Arbogast Decl., Ex. 13.  (Both

2   Countrywide Home Loans, Inc. and Countrywide Bank, FSB are defendants in MDL 1988.)

### 3.      Countrywide Failed to Carry its Burden for Removal

4       Defendants' removal hinges on just two single-page website printouts, neither of which disputes

5   their public statements or their filings in other pending cases.  Their first purported "evidence" of

6   citizenship is a print-out stating that Defendant Countrywide Bank FSB, on February 4, 2009, "[m]oved

7   bank headquarters from Alexandria, Virginia to Centennial, Colorado."  Bader Decl., Ex. 1. Yet, just one

8   week after that, on February 11, 2009, Countrywide Bank filed a Notice of Removal in *Weber v.*

9   *Countrywide Financial Corp.*, No. CV09-01019-FMC (MANx) (C.D. Cal.), which states, "**Defendant**

10  **Countrywide Bank, FSB is a federal savings bank with its principal place of business in Calabasas,**

11  **California**."  See Notice of Removal, ¶ 29, Arbogast Decl., Ex. 5.   Then, approximately two weeks later,

12  on February 19, 2009, Defendants CHL and Countrywide Bank filed a declaration in *Montaquila v.*

13  *Countrywide Home Loans, Inc., et al.*, No. CV07-07094 GHK (C.D. Cal.) which stated that "**Both CHL**

14  **and Countrywide Bank have their headquarters and principal places of business in Calabasas,**

15  **California**."  *See* Lanoux Decl., Arbogast Decl., Ex. 14.   Thus, the single page print-out upon which

16  Countrywide Bank heavily relies to meet its burden on removal is, at the very least, inaccurate and

17  untrustworthy.  Certainly, taken together with Plaintiff's evidence, there is a doubt about Countrywide

18  Bank's citizenship that must be resolved in favor of remand.  *See Duncan v. Stuetzle*, 76 F.3d at 1485.

19      In addition, Defendants rely on another print-out from the Office of Thrift Supervision (Bader Decl.

20  Ex. 2), stating that Countrywide Bank's "**Mailing Address**" is 225 West Hillcrest Drive, **Thousand Oaks,**

21  **California**," which reinforces the fact that Countrywide Bank still has its principal place of business here

22  and that this case should be remanded back to state court.  Retaining Countrywide Bank's mailing in

23  California also makes sense given that Barbara Desoer, President of the Bank of America mortgage, home

24  equity, and insurance services business moved to California and now occupies the offices of former

25  Countrywide CEO Angelo Mozilo and that corporations logically would want their mail sent where their

26  "brain" is located.  *See* Bank of America, press release, May 28, 2009 ("**Barbara Desoer**, who has been

27  Chief Technology and Operations Officer, **will now be President of the consumer real estate operations**

28  **of Countrywide Financial Corporation and Bank of America when they are combined.  She will be**

1  based in Calabasas, California.”), Arbogast Decl., Ex. 15; *Remarks to the California Bankers Association,*

2  *Women in Leadership Forum Pasadena, California,* June 9, 2009  (“Considering it required uprooting my

3  family, **making a cross country move, and going to the center of the economic storm** [Calabasas

4  California], there was plenty to think about, but I said yes on the spot!), Arbogast Decl., Ex. 16; *see also*

5  *Cleaning Crew, The women who are fixing the financial mess*, Jeff Bailey, Forbes.com, April 23, 2009

6  (“...**Desoer moved across the country and took over Mozilo’s big corner office suite** with a bank of

7  windows overlooking the verdant hills above, **Los Angeles’ San Fernando Valley**), Arbogast Decl., Ex.

8  17; *see also* Bank of America, 2008 Annual Report, p. 9 (**“Barbara Desoer, a longtime Bank of America**

9  **leader, has moved to Calabasas, California, where she is leading the team that is hard at work**

10  **reinventing the home lending industry**.”), Arbogast Decl., Ex. 18; *see also id*. at p. 5 (“We agreed to

11  acquire Countrywide in January of last year.  We knew that we were heading into a difficult economic

12  period in which home mortgages would be at the center of an intense economic storm.  **We also knew that**

13  **acquiring Countrywide would give us** the best mortgage technology platform in the business; **thousands**

14  **of capable and experienced associates; and a leading market position in the United States in home**

15  **lending** - the foundational financial product for millions of American families in the most prosperous

16  country in the world.”).  Thus, there is no question that Countrywide Bank’s top executives continue to be

17  located in and dictate company activities from California.

18       Other than the website print-outs from the FDIC and the OTC, Defendants do not submit any other

19  evidence, much less credible evidence, showing that Countrywide Bank actually moved its offices from

20  California to any other state.  Nor have they provided the Court with their articles of incorporation or any

21  documentation of either the alleged merger or change in their corporate headquarters; rather, they predicate

22  their entire removal on these two single page print-outs.  Certainly, the conflicting public statements, and

23  the filings and findings of the OCC create a serious doubt about Countrywide Bank’s claim of Colorado

24  citizenship at the time this action was filed on June 2, 2009.

25       Accordingly, Defendants have not met their burden of establishing removal jurisdiction and, on this

26  ground alone, the matter should be remanded back to state court from whence it came.

27  / / /

28  / / /

Plaintiffs’ Motion for Remand - 3:09-cv-03288-JL

### 4.    Defendants Have Produced No Credible Documentation Showing That Countrywide Bank Is Anything Other than a Wholly Owned Subsidiary

In one breath, Defendants claim that Countrywide Bank is a citizen of Colorado, but in the next, they urge the Court to look to Bank of America's citizenship, which they argue is in North Carolina.  But Defendants fail to produce any Corporate Directive indicating that Countrywide Bank and Bank of America actually merged prior to the filing of their removal papers.

It is well settled that "**[a] subsidiary's citizenship remains separate from its parent corporation for the purpose of diversity jurisdiction**." *Glazier & Associates, P.C. v. Teleport, Inc.*, 2001 WL 34041792 at *2 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d at 164 and *USI Props. Corp. v. MD Constr. Co.*, 860 F.2d at 7); *see also Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir.1994) (recognizing the "general rule" that a subsidiary's citizenship is determined without reference to that of its parent corporation, but declining to extend the rule to a mere "division" of a corporation).

Without any official action by the Boards, Countrywide Bank must continue to remain as a separate wholly owned subsidiary.

### 5.    Under the "Place of Operations" and "Nerve Center" Tests, Defendants are Citizens of California

A corporation is a citizen of:  (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1).[8] "When quantifying corporate activity to determine a corporation's principal place of business, one must keep in mind that the purpose of diversity jurisdiction is to avoid the effects of prejudice against outsiders.  Thus, the principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders." *Industrial Tectonics v. Aero Alloy*, 912 F.2d at 1094 (citations omitted).

In the Ninth Circuit, courts apply two different tests to determine the state of a corporation's

---

[8]  In *Mount v. Wells Fargo Bank, N.A.*, the Central District of California held that for the purposes of diversity jurisdiction, national banks are on the same footing as any other corporation- a national bank is the citizen of the state of its principal place of business and the state listed in its organization certificate or articles of association. No. CV 08-6298 GAF (MANx), 2008 WL 5046286 at *1-2 (C.D.Cal. Nov. 24, 2008). Thus, they have duel citizenship, not alternative citizen as Defendants imply here.

Plaintiffs' Motion for Remand - 3:09-cv-03288-JL

principal place of business.[9]  The Ninth Circuit has instructed courts to first apply the "place of operations" test.  Under that test, a corporation's principal place of business is the state containing "a substantial predominance of corporate operations."  *Davis v. HSBC Bank Nevada NEVADA, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (quoting *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001) (*per curiam*) (quoting *Industrial Tectonics v. Aero Alloy*, 912 F.2d at 1092).  If no state contains a "substantial predominance" of corporate operations, courts are to apply the "nerve center" test, which locates the corporation's principal place of business in the state where "the majority of its executive and administrative functions are performed." *Id.*

> **a.   Defendants are Citizens of California When Applying the Place of Operations Test**

Determining whether a "substantial predominance" of a corporation's operations take place in a given state "plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states." *Id.*  "We employ a number of factors to determine if a given state contains a substantial predominance of corporate activity, including: "the location of employees, tangible property, production activities, sources of income, and where sales take place." *Id.*  Substantial predominance does not require the majority of the corporation's operations to occur in a single state, but the corporation's activity in one state must be "substantially larger" than the corporation's activity in any other state." *Id.*  "The party invoking diversity jurisdiction, therefore, must establish under the *Tosco* test that the state at issue does not contain a substantial predominance of its business activity.  ***Doubt must be resolved against said party***." *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d at 1047 (emphasis added). Here, Defendants made no effort at all to demonstrate that a substantial predominance of their operations take place in any state, much less a state other than California.  Therefore, as above, they have failed to meet the burden that is theirs of demonstrating a substantial predominance for any state other than California.

The only logical reason Defendants made no such effort is that their corporate operations have been and are to this day not only predominantly in California but actually centered in California.  On July 30, 2008, Countrywide Bank, FSB, and Countrywide Home Loans, Inc., admitted as much when it along with

---

9   28 U.S.C. § 1348 provides that national banks are citizens of the states where they are located, that is, where there principal place of business is located or where they file articles of association. *See Mount v. Wells Fargo Bank, N.A.*, 2008 WL 5046286.

Plaintiffs' Motion for Remand - 3:09-cv-03288-JL

1   other Countrywide defendants filed a motion for transfer and coordination or consolidation pursuant to 28

2   U.S.C. § 1407 of five pending civil actions into the MDL.  As part of that motion, Defendants stated:

> 6.  Movants respectfully suggest that the two actions not already pending before the Central District of California are appropriate for transfer to that Court.  Three of the five constituent actions are pending in the Central District of California.  **That district also includes Countrywide's principal place of business.  An overwhelming number of the witnesses and documents with discoverable information will be located in or near the Central District of California because Countrywide Financial Corp.'s principal place of business is in that district.**

7   If this alone were not enough, in deciding whether a corporation's operations "substantially"

8   predominate, Defendants herein are clearly California residents when evaluating the Ninth Circuit's

9   instructions that courts "must take into consideration both the nature of the corporation's business activities

10   and the purposes of the corporate citizenship statute."  The purpose of diversity jurisdiction, and the

11   citizenship determinations associated with it, is to avoid the effects of prejudice against outsiders.  *Industrial*

12   *Tectonics v. Aero Alloy*, 912 F.2d at 1094.  Thus, the term "substantially" must be defined with an eye to

13   ensuring that a corporation is a citizen of the state where it is least likely to suffer prejudice.  *Id.*

14   Here, there is no question that a substantial predominance of Countrywide Bank's activity occurs

15   in California.  *See* Notice of Removal, ¶ 28 ("Countrywide ... made hundreds of thousands of payment

16   option loans, and had a **substantial business in California**.").  A review of Countrywide Bank's activities

17   demonstrates that a "substantial predominance" of its operations have and still do take place in California.

18   As discussed, notwithstanding Countrywide Bank's assertion that its "home office" is in Colorado, it has

19   presented no evidence to dispute the fact that the core of its business is concentrated in and conducted from

20   its headquarters in Calabasas, California.  *See* Motion to Transfer and Consolidate to Multi-District

21   Litigation Panel (MDL No. 1988 (S.D. Cal.), filed on July 30, 2008, Arbogast Decl. Ex. 19. )

### (1).   Location of Tangible Property

23   Although Plaintiffs have not identified all of Countrywide Bank's tangible property as of June 2,

24   2009, Plaintiffs have identified that Countrywide Bank's assets include over 900,000 square feet of

25   executive offices in Calabasas, California.  *See*  2002 Countrywide Annual Report at pages 17-18, Arbogast

26   Decl., Ex. 20.

### (2).   Location of Employees

28   When Bank of America acquired Countrywide Bank, the Countrywide Bank employees stayed on.

For the mortgage division, those employees remained in California:

> We agreed to acquire Countrywide in January of last year. We knew that we were heading into a difficult economic period in which home mortgages would be at the center of an intense economic storm. **We also knew that acquiring Countrywide would give us** the best mortgage technology platform in the business; **thousands of capable and experienced associates; and a leading market position in the United States in home lending** — the foundational financial product for millions of American families in the most prosperous country in the world.

*See* 2008 Annual Report at page 5, Arbogast Decl., Ex. 18.

Not only the associates remained, but key executives were sent to California to join the already existing management team:

> **Barbara Desoer, a longtime Bank of America leader, has moved to Calabasas, California, where she is leading the team that is hard at work reinventing the home lending industry**. Barbara's experience leading our Consumer Products and Global Technology & Operations divisions in recent years has prepared her well for this challenge.

*See* 2008 Annual Report at page 9, Arbogast Decl., Ex. 18.

And presumably the "team" Desoer was sent to lead is the "thousands of capable and experienced associates" already situated in Calabasas, California. 2008 Annual Report at page 5, Arbogast Decl., Ex. 18; B of A Press Release, April 27, 2009 (*from Calabasas*), Arbogast Decl., Ex. 21; *see also* BofA Press Release, April 28, 2008 (*from Los Angeles*), Arbogast Decl., Ex. 22:

> Now California in particular will benefit from this transaction. **I am pleased to also announce today that Calabasas, California will be the national headquarters for the combined mortgage business.** This decision highlights the continued importance of the California market to Bank of America and our commitment to maintaining our leadership position here.

Accordingly, under the "nerve center" test, Countrywide Bank is a citizen of the State of California..

**6.     To the Extent That It Is Relevant, Under the "Place of Operations" Test, Bank of America is also a Resident of California**

Countrywide has asserted that on or about September 6, 2005, Treasury Bank, N.A., changed its name to Countrywide Bank, N.A, and then on March 12, 2007, Countrywide Bank, N.A. became a federally-chartered savings association and changed its name to Countrywide Bank, FSB. Notice of Removal, ¶ 16. Defendants further allege, albeit incorrectly, that on or about April 27, 2009, Countrywide Bank, FSB merged into and became part of Bank of America, N.A. *Id.* In fact, contrary to Defendants' assertions, Countrywide Bank, FSB, was converted into a national association on or about April 26, 2009, and became Countrywide Bank, N.A. Countrywide Bank, N.A. is and at all relevant times has been a fully

owned subsidary of Countrywide Financial Corporation, and there is no evidence of Countrywide Bank merging with Bank of America, N.A., other than Defendants' vague references to website printouts.

However, the existence of diversity jurisdiction depends on the citizenship of the parties at the commencement of the action. *Mann v. City of Tucson, Dept. of Police*, 782 F.2d 790 (9th Cir. 1986).  As more recently stated by the Ninth Circuit, "We start with the core principle of federal removal jurisdiction on the basis of diversity-namely, that it is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v Air Transport Assoc. of Am.*, 300 F.3d 1129, 1131-32 (9th Cir. 2002) (*citing Morongo Band of Mission Indians v. California State Bd. Of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988)) (finding diversity is determined by citizenship of parties as of filing of the original complaint); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir.1998) (holding diversity must exist when action is removed).  Once jurisdiction is determined, a party cannot thereafter, by its own change of citizenship, create or destroy diversity. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 391 (1998); *Southern Pac. Co. v. Haight*, 126 F.2d 900, 903 (9th Cir.1942).  Nor may the presence of a sham or nominal party create or defeat removal on diversity grounds. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir.1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987).  And any doubts must be resolved in favor of remand. *See Duncan v. Stuetzle*, 76 F.3d at 1485.

Moreover, on the remote chance that this court might consider the extent Bank of America's involvement in California to be relevant, under the "Place of Operations" test Bank of America itself is a California resident.  Certainly, Bank of America  has more locations in California and more employees staffing those locations than in any other state. See .F.D.I.C. list of current Bank of America office by State with deposit totals for each State, Arbogast Decl., Ex. 23.

### a.    Location of Tangible Property

Bank of America has more office locations in the state of California than any other state.  Having office and branch locations in 35 States, Bank of America has 1,015 branches in California and the next highest state of Florida only has 665.  Almost 20% of all Bank of America offices are located in the state of California.   See .F.D.I.C. list of current Bank of America office by State with deposit totals for each State, Arbogast Decl., Ex. 23.

/ / /

1    **b.    Sources of Income**

2    "***More Californians -- and more California businesses -- are customers of***

3    ***our company than citizens or businesses from any other state.***"

4    *See* Bank of America, Press Release, June 12, 2007, Arbogast Decl., Ex. 24.

5    In addition, as June 30, 2008, the most current report available, Bank of America, NA had 21.47%

6    of the California deposit market share.   Second in market share was Wells Fargo Bank, NA, with only

7    14.76% of the California deposit market.   *See* FDIC, Market Share Report for California, Arbogast Decl,

8    Ex. 28.

9    Another source of revenue for a bank is the amount of its deposits.   Out of $645 billion in deposits

10   at Bank of America, California alone represents over 25% of all deposits.   $164 billion in deposits came

11   from California residents, while the next highest state was almost $100 billion less in deposits.   *See* FDIC

12   Bank Summary of State Offices and Deposit totals , Arbogast Decl., Ex.23.

13   As discussed below in "Location of Sales," because the largest percentage (both by number and

14   amount) of loan originations still occurs in California, this State remains the largest source of income for

15   Countrywide Bank, FSB in its incarnation as an indirect wholly-owned subsidiary of Bank of America,

16   CWBNA - Colorado.  See Bank of America, 2008 Annual Report, pp. 64, 66, Arbogast Decl., Ex. 18; see

17   also Bank of America 2009 1st Q 10Q at page 134, Arbogast Decl., Ex. 28.   California also is the largest

18   source of measurable income for Bank of America.

19   **c.    Location of Sales**

20   It is also clear that California is the location of a substantial portion of the sales through origination

21   of mortgage loans: "In addition, residential mortgage loans to borrowers in the state of California

22   represented 36 percent of total residential mortgage loans at both March 31, 2009 and December 31, 2008."

23   *See* Bank of America 2009 1st Q 10Q at page 134, Arbogast Decl., Ex. 25.   As a dollar value, California far

24   and away has the highest concentration of loans with $91,559,000,000 outstanding in March 31, 2009

25   compared to the next closest state of New York with $17,749,000,000.   *Id.*   Further, in reporting on its

26   discontinued real estate portfolio, Bank of America stated:

27   California represented 38 percent of the portfolio and 35 percent of the nonperforming loans
     while Florida represented 10 percent of the portfolio and 18 percent of the nonperforming
28   loans at March 31, 2009.   The Los Angeles-Long Beach-Santa Ana MSA within California

15

1    made up 13 percent of outstanding discontinued real estate loans at March 31, 2009.

2    *See* Bank of America 2009 1st Q 10Q at page 136, Arbogast Decl., Ex. 25.

3                    **7.    Under the Nerve Center Test Defendants Are Residents of California**

4            In the Ninth Circuit, "the 'nerve center' test should be used only when no state contains a substantial

5    predominance of the corporation's business activities." *Industrial Tectonics v. Aero Alloy,* 912 F.2d at 1094.

6    More recently, this Court determined that it "should decline to resort to the nerve center test unless the

7    corporation proves that the difference between the levels of business activity in the states being compared

8    is relatively insignificant." *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d at 1043.   As discussed,

9    Defendants have provided no evidence at all regarding their operations.  Although Plaintiffs believe that the

10   place of operations test shows that Countrywide Bank (and even Bank of America itself) is a California

11   citizen, if the Court finds that no single state contains a "substantial predominance" of Countrywide Bank's

12   activities, then the "nerve center" test becomes the appropriate measure.

13           Under the "nerve center" test, the principal place of business is the state in which the "executive and

14   administrative functions [of the corporation] are performed." *Industrial Tectonics v. Aero Alloy*, 912 F.2d

15   at 1092, 1094.  In determining where a corporation exercises the day-to-day control of its operations, ***it is***

16   ***appropriate to look at where the defendant's corporate officers work***, where the defendant's corporate

17   policies and procedures are made, where corporate records are maintained and where such corporate

18   functions such as legal, finance, accounting, marketing, and human resources are based.  *See Korn v. Polo*

19   *Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204 (E.D. Cal. 2008); *Piazza v. EMPI, Inc.*, No.

20   1:07-cv-00954-OWW-GSA, 2008 WL 590494 at *12 (E.D. Cal. Feb. 29, 2008).  There can be no question

21   that California is the state where the majority of Defendants' executive and administrative functions are

22   performed.

23           Indeed, it is undisputed that Barbara Desoer moved to California to lead Countrywide Bank's

24   operations.  It is also clear that the management team is centered in California: "[Desoer] has spent some

25   of her time winning over a veteran management team assembled by her predecessors. Jack Schakett, who

26   had been chief of operations at the former Countrywide and is now in charge of credit strategy and problem

27   loans, says he didn't know what to expect when she arrived. Desoer has won him over."  Jeff Bailey,

28   Forbes.com, (*Cleaning Crew*), April 23, 2009, Arbogast Decl., Ex. 17.

                                                16

Additionally, as part of the proposed Bank of America and Countywide Financial Corporation acquisition approval, public hearings were held on Monday, April 28, 2008 at the Los Angeles Branch of the Federal Reserve Bank of San Francisco.  During that meeting, Liam McGee, President of Bank of America Corporation's Global Consumer & Small Business Banking stated:

> Now California, in particular, will benefit from this transaction.  I am pleased to announce today that Calabasas, **California will be the national headquarters** for the combined mortgage business.  This decision highlights the continued importance of the California market to Bank of America and our commitment to maintaining our leadership position here.

*See* Bank of America, Press Release, April 28, 2008, Arbogast Decl., Ex. 9.

On April 27, 2009, Bank of America issued a Press Release from Calabasas, California announcing that it was planning on retiring the Countrywide brand and introducing its own mortgage lending program:

> The Bank of America Home Loans brand represents **the combined operations** of Bank of America's mortgage and home equity business and Countrywide Home Loans, which Bank of America acquired on July 1, 2008. The Countrywide brand has been retired.

*See* Bank of America Press Release, April 27, 2009, Arbogast Decl. Ex. 21, (emphasis added).

Thus, under Bank of America's plan, while it might intend to combine its operations with a "new" subsidiary, the executive functions, central operations and decision-making for mortgage lending will still remain in California.  This further supports a finding, under the "nerve center" test, that Countrywide Bank is, and has been, a California citizen.

## C.    CAFA's "Local Controversy" Exception Bars Any Finding of Federal Jurisdiction

The local controversy exception bars the exercise of federal jurisdiction when greater than two-thirds of the class members are citizens of the state in which the action was originally filed, the principal injuries about which the plaintiffs complain occurred in the state in which the action was originally filed, and at least one defendant, from whom significant relief is sought and whose conduct forms a significant basis for the claims asserted, is a citizen of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4).

Here, Plaintiffs and the entire Class are citizens of California and the injuries occurred in California.  FAC ¶ 2-4, 15 and 52.   Thus, there is no dispute as to the first two criteria for the local controversy exception.  However, whether at least one of the named defendants, from whom significant relief is sought (Countrywide Bank) has diverse citizenship is disputed.

17

1    As shown above, under both the "place of operations" and "nerve center" tests, Countrywide Bank

2    is, for jurisdictional purposes, a citizen of California.  Thus, this evidence demonstrates that the minimal

3    diversity requirement of  28 U.S.C. § 1332(d)(4) does not exist.

4    **D.    Defendants Do Not Come Close to Establishing Federal Question Jurisdiction.**

5    **1.    Defendants' Complete Preemption Arguments are Baseless.**

6    Plaintiffs' claims arise exclusively under California law and thus do not support removal based on

7    federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a).  In arguing that this case is removable

8    under the doctrine of "complete preemption," Defendants either misunderstand or hope this Court

9    misunderstands the difference between ordinary preemption as a federal law *defense* and complete

10   preemption as a grounds for removal where Congress creates an exclusive federal *cause of action*.  Although

11   neither doctrine applies to this case, the Court need only address the latter to decide this Motion.

12   It is beyond settled law that: (1) federal courts may exercise removal jurisdiction over state-court

13   actions "of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a);

14   that (2) federal district courts have original jurisdiction over "all civil actions arising under the Constitution,

15   laws, or treaties of the United States," 28 U.S.C. § 1331; and that (3) the "presence or absence of federal-

16   question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal

17   jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

18   complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

19   In light of these bedrock principles of American law, the Supreme Court has repeatedly held that

20   the removal statute "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by

21   exclusive reliance on state law." *Id*. at 392 (citing *Merrell Dow Pharm's, Inc. v. Thompson*, 478 U.S. 804,

22   809 n.6 (1986); *Great North Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918); *The Fair v. Kohler Die &

23   Specialty Co.*, 228 U.S. 22, 25 (1913)).  Since it is the plaintiff's complaint that is the sole basis for

24   determining federal court jurisdiction and not a defendant's response to that complaint, "[a] defense that

25   raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm's, Inc. v.

26   Thompson*, 478 U.S. at 808.  This includes defenses based on alleged federal preemption.  "[A] case may

27   *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even

28   if the defense is anticipated in the plaintiff's complaint, and even if both sides concede that the federal

defense is the only question truly at issue." *Caterpillar, Inc. V. Williams*, 482 U.S. at 393 (emphasis in original); *see also Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150 (1988) ("We simply hold that respondents must present their pre-emption argument to the Texas state courts, which are presumed competent to resolve federal issues.").

Despite the foregoing, Defendants erroneously claim that there is federal question jurisdiction over Plaintiffs' state-law claims by misapplying the doctrine of complete preemption. "Complete preemption" is not an exception to the rule that federal law defenses, including preemption defenses, do not create federal question jurisdiction. This is because complete preemption is *not* a federal law defense but rather a doctrine wherein the Supreme Court has recognized in extremely limited circumstances Congress's express intent to create an exclusive federal law cause of action that is deemed to subsume a state-law claim into a federal one so that:

> When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court.

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. at 8. Complete preemption removal thus applies only if "the federal statutes at issue provided the exclusive cause of action for the claim asserted ***and also set forth procedures and remedies governing that cause of action.***" *Id.* (emphasis added).

It is on this requirement that Defendants' removal argument here falls apart. In arguing for complete preemption removal, Defendants rely on cases addressing preemption under the National Bank Act as a defense to liability. *See*, *e.g.*, Notice of Removal ¶45 (citing *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007); *Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949, 956 (9'th Cir. 2005)), ¶48 (citing *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9 th Cir. 2008); *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-3327 RMW, 2007 WL 2213216 at *3-5 and n.5 (N.D. Cal. July 31, 2007)). But the Supreme Court in *Beneficial* squarely held that the existence of any preemption defense under the National Bank Act, or any other statute, alone does not support removal:

> If, as petitioners asserted in their notice of removal, the interest that the bank charged to respondents did not violate [12 U.S.C.] § 85 limits, the statute unquestionably pre-empts any common-law or Alabama statutory rule that would treat those rates as usurious. ***The section would therefore provide the petitioners with a complete federal defense. Such a federal defense, however, would not justify removal.***

539 U.S. at 9 (emphasis added).  Rather, to decide if the case was removable under the National Bank Act, the Supreme Court held that it must determine whether Congress intended "to provide the exclusive cause of action for usury claims against national banks."  *Id.*  In holding that Congress did so, the Court focused not just on the statute's express preemption provision for usury claims, but also on its express *remedial* provision that "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim."  *Id.* (citing 12 U.S.C. § 86).

In arguing for complete preemption removal here, Defendants do not and cannot point to any evidence of Congress's intent to create an exclusive federal remedy for persons injured by deceptive predatory mortgage lending practices.  This is because Congress never had any such intent.  Unlike in *Beneficial*, Defendants here identify no federal statutory provision setting forth the elements of a federal consumer fraud claim against National Banks that provides a statute of limitations for such claims, remedies for such claims, or even the setting forth of procedures for such claims, simply because *such federal claims do not exist*.  In the complete absence of such federal statutory remedial provisions, there is not even a facially plausible argument for removal based on complete preemption.  For this reason alone, Defendants' federal question jurisdiction arguments are baseless.

Moreover, also unlike in *Beneficial*, Defendants here do not and cannot even point to an express statutory *preemption* provision to support a preemption *defense*, let alone removal based on complete preemption.  This is because the National Bank Act has no express preemption provision addressing fraudulent mortgage lending practices like those at issue here.  Instead, Defendants rely for the preemption part of their argument on regulatory agency pronouncements on preemption that were made *140 years after Congress enacted the statute.  See* Removal Pet. ¶42 (citing Office of Comptroller of the Currency ("OCC") regulation,12 C.F.R. § 34.4 (2004)); *see also* Notice of Removal ¶50 (citing federal Home Owners Loan Act, 12 U.S.C. § 1461 *et seq.* (1933), and Office of Thrift Supervision preemption regulation, 12 C.F.R. §§ 560 *et seq.* (1996)).  But these *post-hoc* agency pronouncements have no bearing whatsoever on the complete preemption issue of whether *Congress* at the time of enacting the statute intended to create an exclusive cause of action for consumer fraud by national banks.  *See Cuomo v. The Clearing House Ass'n, LLC*, 127 S. Ct. 2710, 2717-20 (2009) (holding that OCC regulation enacted on same day as regulation at

1   issue here and preempting state-law enforcement actions, 12 C.F.R. § 7.4000, is invalid as interpretation

2   of National Bank Act, because it "attempts to do what Congress declined to do: exempt national banks from

3   all state banking laws, or at least state enforcement of those laws"); *see also Wyeth v. Levine*, 129 S. Ct.

4   1187, 1203 (2009) (holding that Food and Drug Administration's preemption position announced 98 years

5   after Congress enacted Food, Drug and Cosmetic Act merits no deference).[10]

6        Since Congress enacted no express preemption or remedial provisions addressing consumer fraud

7   claims of predatory and deceptive mortgage lending practices by national banks, Defendants do not come

8   close to making out a complete preemption argument for removal based on the National Bank Act or HOLA.

9        **2.**    **Defendants' Complete Preemption Argument Under TILA Also Has No Merit**

10        For substantially similar reasons, Defendants' argument (Notice of Removal ¶¶56-60) for removal

11   jurisdiction based on complete preemption under the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601

12   *et seq.*, also fails.  As discussed, in order to remove a case based on complete preemption, a defendant must

13   demonstrate that "the federal statutes at issue provided the ***exclusive cause of action*** for the claim asserted

14   and also set forth procedures and remedies governing the cause of action."  *Beneficial Nat'l Bank v.*

15   *Anderson* 539 U.S. at 8 (emphasis added).  In enacting TILA, Congress obviously did create statutory

16   rescission and money damages remedies for persons injured by a lender's failure to comply with the Act's

17   disclosure requirements.  *See*, *e.g.*, 15 U.S.C. §§ 1635, 1640-41.  But this absolutely does not demonstrate

18

19   [10]   For the reasons discussed, the Court need not decide the validity of the recent OCC or OTS pronouncements on preemption *as a defense* in order to resolve the jurisdiction issue here.  But Plaintiffs do not for a second

20   concede the validity of either agency's sweeping preemption pronouncements, which cannot be reconciled with the Supreme Court's rulings in *Cuomo v. The Clearing House Ass'n, LLC* and *Wyeth v. Levine* on the limits to an

21   executive agency's authority to decide a statute's preemptive scope.  *See*, *e.g.*, *Cuomo*, 129 S. Ct. at 2715 ("The Comptroller can give authoritative meaning to the statute within the bounds of that uncertainty.  But the presence

22   of some uncertainty does not expand *Chevron* deference to cover virtually any interpretation of the National Bank Act.").

23        The fact that the OCC's preemption regulations were promulgated within the past five years is significant in light of the President's recently issue Memorandum directing, in relevant part, that:

24

25       3. Heads of departments and agencies should review regulations issued within the past 10 years that contain statements in regulatory preambles or codified provisions intended by the department

26       or agency to preempt State law, in order to decide whether such statements or provisions are justified under applicable legal principles governing preemption.  Where the head of a department

27       or agency determines that a regulatory statement of preemption or codified regulatory provision cannot be so justified, the head of that department should initiate appropriate action, which may

28       include amendment of the relevant regulation.

*See* White House Statement re Preemption, May 20, 2009, Arbogast Decl., Ex. 26.

an intent by Congress to make these the *exclusive* causes of action or remedies for consumers injured by deceptive or predatory lending practices.

To the contrary, Congress explicitly stated its intent *not* to create exclusive causes of action and remedies by enacting a carefully worded preemption *and savings* provision that limits TILA's preemptive effect to those state laws creating *inconsistent* disclosure requirements:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter **and then only to the extent of the inconsistency**.

15 U.S.C. § 1610(a).  Congress thus made clear its intent to preempt *only* those state laws found by the Federal Reserve Board to impose inconsistent disclosure requirements, thereby also expressing a clear intent *not* to preempt all state-law causes of action or remedies.  TILA's express preemption and savings provision thus conclusively refutes Defendants' attempt to cobble together a complete preemption argument for removal based on TILA.  *See Magee v. Exxon Corp.*, 135 F.3d 599, 602 (8th Cir. 1998) ("We need go no further than the statutory text to conclude the ***TILA lacks that extraordinary preemptive power necessary to convert a state-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule***.  On the contrary, the plain terms of the Act show Congress intended generally to disclaim preemption . . .") (citations omitted) (emphasis added).[11]

Cases from this and other federal courts also conclusively demonstrate that Congress did not create exclusive causes of action and remedies under TILA.  In *Plascencia v. Lending 1st Mortgage*, 583 F. Supp.2d 1090 (N.D. Cal. 2008), the Court held that an Option ARM lender's TILA preemption arguments for dismissing borrowers' state-law claims alleging failure to disclose material facts about these loans, including the certainty of negative amortization, found "no support in the text of TILA's 'preemption provision'" because it "applies only to laws 'relating to the disclosure of information in connection with credit transactions,' and preempts those laws only to the extent that the 'terms and forms' mandated by the

---

[11]   *See also Wells Fargo Bank West, Nat'l Ass'n v. Burns*, No. 03-3501, 2004 WL 1253281 at * 1 (8th Cir. June 9, 2004) (unpublished op.) ("[T]he complete-preemption doctrine does not apply to claims under the TILA."); *Jackson v. Bank One*, 952 F. Supp. 734, 736 (M.D. Ala. 1996) ("The TILA does not contain a civil enforcement provision that requires complete preemption of law, nor is there any other manifestation that Congress intended preemption."); *General Elec. Capital Auto Lease, Inc. v. Mires*, 788 F. Supp. 948, 950 (E.D. Mich. 1992) (rejecting complete preemption argument under TILA).

state are 'inconsistent with those required by TILA," so that the "preemption provision applies **only to inconsistencies in the substance of state disclosure requirements.**" *Id.* at 1099 (emphasis added). By thus holding that TILA's only preemptive effect concerns the *substance* of state-law disclosure requirements, not the causes of action and remedies for any violation thereof, this Court's ruling in *Plascencia* precludes any finding that TILA supports complete preemption removal based on an exclusive federal remedial scheme.

Decisions by numerous other federal courts echo *Plascencia*'s holding on the limits of preemption under TILA. *See, e.g., Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 500 (D.C. Cir. 1999) ("Nothing in TILA or its legislative history suggests that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers."); *In re Ferrell*, 358 B.R. 777, 792 (9th Cir. 2006) (reading § 1610(a) to provide that "TILA does not preempt inconsistent state consumer protection laws regarding closed-end loan disclosures"); *In re First Alliance Mortg. Co.*, 280 B.R. 246 (Bankr. C.D. Cal. 2002) (holding that TILA does not preempt state Unfair Competition Law claims unless they directly conflict); *Knapp v. Americredit Fin. Serv's*, 245 F.Supp.2d 841 (S.D. W.Va. 2003) (holding TILA does not preempt state consumer protection statute unless provisions are inconsistent with TILA).

Finally, the Federal Reserve Board's Official Staff Commentary echoes the foregoing in recognizing that TILA does not even create exclusive disclosure requirements, let alone exclusive causes of action and remedies, and thus cannot serve as a vehicle for complete preemption removal:

> 3. Laws not contradictory to chapters 1, 2, and 3. ***Generally, state law requirements that call for the disclosure of items of information not covered by the federal law, or that require more detailed disclosures, do not contradict the federal requirements.*** Examples of laws that are not preempted include: a. A state law that requires disclosure of the minimum periodic payment for open-end credit, even though not required by § 226.7. b. A state law that requires contracts to contain warnings such as: 'Read this contract before you sign. Do not sign if any spaces are left blank. You are entitled to a copy of this contract.'

Comment, 16 C.F.R. § 226.28(a) (emphasis added).

In light of the unanimous opinion of federal courts, including this one, and the Federal Reserve Board that TILA does not create exclusive requirements *even within the domain of its express preemption clause*, there is simply no basis for Defendants' argument that TILA creates an exclusive cause of action for mortgage loan disclosures that would completely preempt Plaintiffs' state-law claims. Defendants'

complete preemption arguments for removal jurisdiction thus resoundingly fail and should be rejected.

**3.      Any Federal Issues Implicated by Defendants' Preemption Defenses Can Be Decided by the California State Courts on Remand**

Defendants' final ground for removal relies on the baseless proposition that Plaintiffs' state-law claims "necessitate the resolution of substantial, disputed questions of federal law, including but not limited to the meaning and application of TILA" because these claims challenge the absence of certain disclosures from Defendants' loan documents, "the form and content of which are governed by TILA (*i.e.* a federal statute) and its implementing federal regulations."  Notice of Removal ¶63.   Like Defendants' other arguments that federal questions support removal, this argument fails.

First, the assertion that Plaintiffs' state-law fraudulent omissions and Unfair Competition Law ("UCL") claims necessitate application of TILA – even if by some stretch relevant to the determination -- is baseless.  Notably, Defendants do not and cannot cite any reference in the Complaint to TILA.  To the contrary, even where Plaintiffs allege that Defendants engaged in "unlawful" business practices under the UCL, they cite California statutes governing fraud and fraudulent omissions that were violated, not TILA. *See* First Amended Class Action Complaint ¶91.

Second, and as discussed repeatedly herein, the fact that Plaintiffs challenge omissions of material information from Defendants' loan documents, including the Truth In Lending Disclosure Statement ("TILDS") (*see* Notice of Removal, ¶67) does not automatically transform these claims into TILA claims or claims under any other federal statute.  As discussed, TILA by its express terms disavows any intention of creating exclusive federal causes of action and remedies, resulting in other courts correctly concluding that "TILA lacks that extraordinary preemptive power necessary to convert a state-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Magee v. Exxon Corp*, 135 F.3d at 602 (citation omitted).  Absent any basis for finding complete preemption, Defendants' remaining arguments based on the alleged possibility of federal issues arising as part of either Plaintiffs' state-law claims or Defendants' asserted defenses to liability provide no basis whatsoever for removal.  *See Merrell Dow Pharm's, Inc. v. Thompson*, 478 U.S. at 813 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); *Caterpillar, Inc. v. Williams*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal

1  defense, including the defense of pre-emption . . .").

2       For all of the foregoing reasons, Defendants' attempts to manufacture federal question jurisdiction

3  where Plaintiffs have deliberately chosen to proceed based exclusively on state-law causes of action fail.

4  Since Plaintiffs are well within their rights to "avoid federal jurisdiction by exclusive reliance on state law,"

5  *id*. at 392, the Motion to Remand should be granted.

6       **E.    Because Defendants' Removal Was Not "Objectively Reasonable," Plaintiffs Request An Award Of Attorney Fees In The Amount of $ 20,000**

7       Defendants' removal was not "objectively reasonable," but rather frivolous, as shown above. Their

8  removal petition is predicated on inaccurate assertions about Countrywide Bank's citizenship which are

9  flatly contradicted by other assertions they have recently made, subject to Rule 11, in other cases in this

10  Circuit. It is also based on the plainly unsupportable position that their purported preemption *defenses* to

11  Plaintiffs' state law claims somehow justify removal when the law is unquestionably to the contrary. There

12  was no "objectively reasonable basis for seeking removal." *See* 28 U.S.C. § 1447(c); *Martin v. Franklin*

13  *Capital Corp.*, 546 U.S. 132, 140-141 (2005). Where there is no "objectively reasonable basis for seeking

14  removal," attorney fees and costs may be awarded. *Id.* The "goal [of this rule] is to deter improper

15  removal." *Circle Ind's USA, Inc. v. Parke Constr. Group, Inc.*, 183 F.3d 105, 109 (2d Cir. 1999).

16       Plaintiffs estimate that they will expend, in excess of $ 20,000 in attorney time and costs in

17  connection with this Motion. Arbogast Decl., ¶¶ 29-32. Accordingly, Plaintiffs respectfully request an

18  award of $ 20,000 against Defendants and their attorneys for unreasonably removing this case, and forcing

19  Plaintiffs to bring this Motion.

20  **IV.    CONCLUSION**

21       For all the foregoing reasons, the Motion to Remand should be granted. Alternatively, Plaintiffs

22  request leave to take limited jurisdictional discovery related to Defendants' corporate form and substantial

23  activity in California or any other concerned state.

24  DATED: August 12, 2009                          **SMOGER & ASSOCIATES**

25

26                                     By:     ___*/s/ Gerson H. Smoger*_____
                                               Gerson H. Smoger, Esq.
27                                             Steven M. Bronson, Esq.
                                               Mark T. Baller, Esq.
28                                             3175 Monterey Blvd
                                               Oakland, CA, 94602-3560

Plaintiffs' Motion for Remand - 3:09-cv-03288-JL

Phone:  (510) 531-4529
Fax:      (510) 531-4377

Jonathan Shub, Esq.
Miriam L. Schimmel, Esq.
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax      (215) 851-8029

David M. Arbogast, Esq.
Jeffrey K. Berns, Esq.
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356.
Phone:  (818) 961-2000
Fax:      (818) 654-5988

Attorney for Plaintiffs and all others Similarly Situated

Plaintiffs' Motion for Remand - 3:09-cv-03288-JL