UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOROTHY PERALTA, STEVEN S.
BIGVERDI AND JAMES MOSCOSO,
on behalf of themselves and others
similarly situated,

    Plaintiffs,

    v.

COUNTRYWIDE HOME LOANS, INC.,
f/k/a AMERICA'S WHOLESALE
LENDER, COUNTRYWIDE HOME
LOANS, INC., and COUNTRYWIDE
BANK, FSB; and DOES 1 through 200,
inclusive,

    Defendants.
_____/

No. C 09-3288 PJH

**ORDER DENYING MOTION TO
REMAND AND TO STRIKE AND
GRANTING MOTION
TO TRANSFER**

    The motion of plaintiffs Dorothy Peralta, Steven S. Bigverdi, and James Moscoso ("plaintiffs") to remand this action to state court and to strike certain portions of defendant's evidence, and the motion of defendants Countrywide Home Loans and Countrywide Bank (collectively "defendant") to transfer this case to the Central District of California ("Central District") and motion to dismiss the complaint, came on for hearing before this court on November 4, 2009. Defendant appeared by its counsel Brooks R. Brown and Robert B. Bader, and plaintiffs appeared by their counsel Gerson Smoger. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion to remand and the motion to strike, GRANTS the motion to transfer, and declines to reach the motion to dismiss for the reasons stated at the hearing and as set forth below.

## BACKGROUND

On June 2, 2009, plaintiffs filed a civil action and putative class action in Superior Court of the State of California for the County of Alameda, <u>Dorothy Peralta et al. v. Countrywide Home Loans, Inc. et al.</u>, Case No. RG 09455493. Plaintiffs filed an amended complaint on June 18, 2009. On July 17, 2009, defendant removed the case to this court, asserting both diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and federal question jurisdiction. Plaintiffs filed a motion to remand on August 12, 2009, and an amended motion to remand on August 14, 2009. On September 1, 2009, defendant filed a motion to dismiss, and a motion to transfer. On September 10, 2009, defendant filed an amended motion to dismiss. Plaintiffs filed a motion to strike on October 14, 2009. On October 26, 2009, plaintiffs filed an emergency ex parte application for order granting leave to take jurisdictional discovery and to continue the hearing on pending motions to allow completion of jurisdictional discovery pertaining to the status of defendant's alleged merger with Bank of America ("BANA"). Plaintiffs then filed a motion for an order shortening time to hear that motion on October 29, 2009.

Plaintiffs allege the following causes of action: (1) fraudulent omissions; (2) violation of California Business and Professions Code section 17200; (3) breach of contract; and (4) tortious breach of the covenant of good faith and fair dealing. Plaintiffs request actual, compensatory, consequential, and punitive damages, as well as restitution, restitutionary disgorgement of all profits, prejudgment interest and attorneys' fees.

The First Amended Complaint ("FAC") challenges the sale of "payment option" loans - loans where the borrower has the option in the early years of the loan of making less than a fully-amortizing monthly payment. Plaintiffs allege that defendant, a federally-chartered savings association, deceptively originated and sold option ARM loans without making the requisite disclosures. Plaintiffs allege that defendant's loan documents promised a low, fixed "teaser" interest rate, FAC ¶¶ 17-19, 21-23, 25, but that in reality, the interest rate surreptitiously increased almost immediately after the loans were signed, FAC ¶¶ 25-26,

1  28-30. Plaintiffs contend that the loan documents indicated that their monthly payments would be applied to "principal and interest" and that negative amortization would not occur. FAC ¶¶ 63-65, 105. However, plaintiffs allege that defendant breached this agreement by failing to apply their payments to the principal, FAC ¶¶ 66-68, 107, resulting in guaranteed negative amortization for plaintiffs and other class members who entered into defendant's option ARM loans, FAC ¶¶ 28, 30, 67-68. Moreover, plaintiffs allege that even upon discovery of these facts, class members could not escape from the loans due to harsh exit penalties. FAC ¶¶ 24, 26, 104.

Plaintiffs claim that as a result of defendant's conduct, plaintiffs and tens of thousands of class members "lost hundreds of thousands if not millions of dollars of equity in their homes." FAC ¶ 100.

**DISCUSSION**

A. Legal Standard

    1. Motion to Remand

In determining whether removal jurisdiction exists, courts construe their jurisdiction narrowly, against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). Defendant, as the removing party, bears the burden of demonstrating that removal jurisdiction is proper, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (creating a "strong presumption against removal jurisdiction") (citations omitted). Thus, a court should resolve all ambiguity in favor of remand to state court. Id.

CAFA vests district courts with original jurisdiction of any civil action in which the amount in controversy exceeds $5,000,000 and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d).[1] Like in other removal cases,

---

[1] 28 U.S.C.S. section 1332(d)(2) states:

    The district courts shall have original jurisdiction of any civil action in which the

3

under CAFA, the burden of establishing removal jurisdiction remains on the proponent of federal jurisdiction. See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 686 (9th Cir. 2006) ("[CAFA] does not alter the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction"); see also Gaus, 980 F.2d at 566 (defendant must show whether it is "more likely than not" that the jurisdictional requirements are met).

2. Motion to Transfer

The court may, for the convenience of parties, witnesses and in the interest of justice, transfer an action to another district where the action might have been brought. 28 U.S.C. § 1404(a). A motion under section 1404(a) must first show that the transferee district is one where the action might have been brought. Id. The movant must demonstrate that the alternate district would have subject matter jurisdiction, personal jurisdiction, and proper venue. Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). If the transferee district is one in which the action might have been brought, the court then assesses various factors related to convenience and the interest of justice. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Since the court may not order a partial transfer, the convenience and justice analysis is only relevant if claims against a party have been severed. See Wyndham, 398 F.2d at 618.

3. Motion to Strike

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Under the express language of [Rule 12(f)], only pleadings are subject to motions to strike."

---

matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state.

4

Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Rule 7(a) limits the definition of "pleadings" to complaints, third-party complaints, answers, and replies to answers. Fed. R. Civ. P. 7(a); see Yount v. Regents University, Inc., 2009 WL 995596, at *11-12 (D. Ariz. 2009) (slip copy) (denying motion to strike affidavit because an affidavit is not a pleading (citing Fed. R. Civ. P. 7(a), 12(f)); Utley v. Continental Divide Outfitters, 2009 WL 631465, at *2 (D. Idaho Mar. 10, 2009) (Rule 12(f) cannot be used to strike an affidavit). Moreover, motions to strike are generally disfavored. Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2nd Cir. 1976) ("In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.").

B.  Motion to Remand

    1.  Diversity Jurisdiction Under CAFA

As previously stated, CAFA vests district courts with original jurisdiction of any civil action in which the amount of controversy exceeds $5,000,000 and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d).

        a.  Number of Plaintiffs

The requirement of 100 persons or more is satisfied here, as plaintiffs allege that they "are informed and believe that the entire Class consist[s] of approximately tens of thousands of individuals residing in California." FAC ¶ 54.

        b.  Amount in Controversy

While plaintiffs do not dispute that the amount in controversy has been satisfied, the FAC does not specify an amount of damages sought. "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met."

1   Abrego Abrego, 443 F.3d at 683; see also Gaus, 980 F.2d at 566 (defendant must show
2   whether it is "more likely than not" that the jurisdictional requirements are met).
3         Generally, the amount in controversy is to be decided from the complaint itself. See
4   Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 363 (9th Cir. 1986) ("The
5   amount in controversy is normally determined from the face of the pleadings."); see also
6   Richmond v. Allstate Ins. Co., 897 F. Supp. 447, 449 (S.D. Cal. 1995). The procedure in
7   the Ninth Circuit for determining the amount in controversy on removal requires a district
8   court to first consider whether it is "facially apparent" from the complaint that the
9   jurisdictional amount is in controversy. See Singer v. State Farm Mut. Auto. Ins. Co., 116
10  F.3d 373, 377 (9th Cir. 1977). If it is not, the court may consider facts in the removal
11  petition as well as evidence submitted by the parties, including "summary-judgment-type
12  evidence relevant to the amount in controversy at the time of removal." Id.
13        As the FAC does not specify an amount of damages sought, the amount in
14  controversy is not "facially apparent" from the face of the complaint. Accordingly, the court
15  looks to the removal petition and other evidence submitted by the parties. Turning to the
16  defendant's notice of removal, defendant states that "[a]lthough [p]laintiffs do not plead a
17  specific damages amount, there is more than $5,000,000 in controversy in this action. . . .
18  [G]iven the FAC's allegation of a California statewide class of tens of thousands of
19  individuals and the relief sought, the aggregate amount in controversy exceeds $5,000,000,
20  exclusive of interests and costs." Notice of Removal ¶ 25. Based on
21  these assertions, defendant has shown that it is "more likely than not" that the amount in
22  controversy exceeds $5,000,000. Accordingly, defendant has satisfied this requirement for
23  federal jurisdiction.
24        c.      Diversity Requirement
25        Turning to CAFA's diversity requirement, the parties dispute whether any member of
26  the plaintiff class is diverse from any defendant. The central issue the court must resolve
27  with respect to diversity jurisdiction is whose citizenship to consider - that of BANA or
28

6

1  Countrywide Bank - and of which state that entity is a citizen for diversity purposes.
2  Additionally, the court must determine whether CAFA's "local controversy exception" bars
3  the exercise of federal jurisdiction in this case.
4      Turning to the issue of Countrywide's citizenship, on the one hand, defendant
5  argues that as a result of a merger between Countrywide Bank and BANA, BANA is
6  Countrywide's successor, and therefore BANA's citizenship is controlling. On the other
7  hand, plaintiffs contend that defendant has not supplied sufficient evidence to establish that
8  the purported merger was ever consummated, and as a result Countrywide Bank is merely
9  a wholly owned subsidiary and therefore its citizenship controls. As discussed below, the
10 court finds that diversity exists regardless of the status of the merger.
11     In Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 318-19 (2006), the Supreme
12 Court overruled the Fourth Circuit's holding that a national banking association is a citizen
13 of every state in which it has a branch. In footnote nine of its decision, the Supreme Court
14 stated:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. See Horton [v. Bank One, N.A., 287 F.3d 426, 431, and n. 26 (5th Cir. 2004)]; Firstar Bank, N.A. [v. Faul, 253 F.3d 982, 993-994 (7th Cir. 2001)]. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

25 Wachovia, 546 U.S. at n. 9.
26     Although the parties cite Horton, 287 F.3d 426 (5th Cir. 2004) and Firstar Bank,
27 N.A., 253 F.3d 982 (7th Cir. 2001), in the absence of Ninth Circuit authority, the court
28

7

chooses not to follow these cases, as they predate the Supreme Court's decision in Wachovia.

After Wachovia, however, two district courts considered the issue currently before this court. In Mount v. Wells Fargo Bank, N.A., 2008 WL 5046286 (C.D. Cal.), the court followed Horton and Firstar Bank, N.A., and found that a national bank is a citizen of the state of its principal place of business and the state in which its main office is located. 2008 WL 5046286 at *2.

To the contrary, in Excelsior Funds, Inc. v. JP Morgan Chase Bank, National Association, 470 F.Supp.2d 312 (S.D.N.Y. 2006), the court analyzed the legislative history of § 1348 and found that:

> The Supreme Court certainly did not, as the plaintiffs suggest, endorse the "principal place of business" test articulated in Horton and Firstar. On the other hand, while the footnote favors the defendant's position, it is difficult to read the footnote, even together with the Court's holding, as conclusively rejecting the possibility that a national bank is also a citizen of the state in which it has its principal place of business. The language is inconclusive and it would have been unnecessary, based on the facts of the case, for the Supreme Court to decide the issue. This footnote, therefore, does not resolve the question of whether the term "located," for § 1348 purposes, includes a national bank's principal place of business. Yet, at the same time, the fairest reading of footnote nine is that the Supreme Court expressed skepticism over whether the term "located" in § 1348 included a national bank's "principal place of business," in view of the absence of such term in the statute.

Excelsior Funds, Inc., 470 F.Supp.2d at 317.

The court agrees with the Southern District of New York's resolution of this issue, as that court conducted a thorough analysis of the Supreme Court's language in footnote nine, and the relevant legislative history of § 1348. Accordingly, the court finds that, for purposes of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located as specified in its articles of association. The court now turns to the respective places of citizenship of Countrywide and BANA.

Federal removal jurisdiction on the basis of diversity is determined, and must exist, as of the time the complaint is filed and removal is effected. Strotek Corp. v. Air Transport

1  Assoc. Of Am., 300 F.3d 1129, 1131-32 (9th Cir. 2002).  Moreover, as a general rule, in a

2  suit involving a subsidiary corporation, the court looks to the subsidiary's place of

3  citizenship without reference to that of its parent corporation.  Breitman v. May Co.

4  California, 37 F.3d 562, 564 (9th Cir. 1994); Danjaq, S.A. v. Pathe Communications Corp.,

5  979 F.2d 772, 775 (9th Cir. 1992).  Thus, with respect to Countrywide's place of citizenship,

6  if the merger was not properly consummated, Countrywide was at the time this case was

7  filed, and remains, a subsidiary of BANA and its citizenship should therefore be determined

8  without regard to BANA's citizenship.

9       Pursuant to a letter from the Office of the Comptroller of the Currency ("OCC"),

10  containing the OCC's "official certification of the conversion of Countrywide Bank, FSB,

11  Centennial, Colorado, to a national bank with the name Countrywide Bank, National

12  Association, effective April 27, 2009," Countrywide converted from a federal savings bank

13  to a national association.  Hammond Decl., Ex. C.  Because the complaint was filed on

14  June 2, 2009, Countrywide was a national bank at the time plaintiffs filed the complaint and

15  removal was effected.  As such, the court will determine its place of citizenship based on its

16  status as a national bank.  As of February 4, 2009, Countrywide Bank's home office has

17  been located in Colorado.  Notice of Removal ¶ 19 (citing Bader Declaration, ex. 1).

18  Accordingly, in the absence of a merger, Countrywide is a citizen of Colorado, and diversity

19  therefore exists.

20       Turning to BANA's place of citizenship, BANA is also a national bank and is

21  therefore a citizen of the state in which its main office is located.  As BANA's main office is

22  located in North Carolina, it is a citizen of North Carolina.  Accordingly, regardless of

23  whether the court finds that the merger was completed, Countrywide's citizenship is diverse

24  from that of the California plaintiffs: if the merger occurred, Countrywide is a citizen of

25  //

26  //

27  //

28

9

North Carolina; if not, Countrywide is a citizen of Colorado. As such, diversity jurisdiction exists.[2]

### d. Local Controversy Exception

Turning to the parties' next contested issue, CAFA's local controversy exception bars the exercise of federal jurisdiction when (1) greater than two-thirds of the class members are citizens of the state in which the action was originally filed, (2) the principal injuries about which the plaintiffs complain occurred in the state in which the action was originally filed, and (3) at least one defendant, from whom significant relief is sought and whose conduct forms a significant basis for the claims asserted, is a citizen of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4).

Here, defendant is not a citizen of California, the state in which the instant action was filed. Therefore, the third element is not satisfied and the CAFA local controversy exception does not bar the exercise of diversity jurisdiction.

Defendant asserts federal question as well as diversity jurisdiction. Even though the court stated at the hearing that the existence of federal question jurisdiction was a much closer question in view of the state claims that predominate in the complaint and plaintiffs' removal of the TILA claim, the court need not reach this issue given that diversity jurisdiction exists. Accordingly, the motion to remand is denied.

## C. Motion to Strike

Preliminarily, Rule 12(f) was not intended to permit courts to strike affidavits, as Rule 12(f) only allows the striking of pleadings, and the Federal Rules of Civil Procedure do not include affidavits in the general definition of "pleadings." Fed. R. Civ. P. 12(f).

Plaintiffs make the same argument as in their previous motion papers - essentially that defendant has not submitted proof that a merger took place, and therefore the

---

[2] At the hearing the court indicated a desire to obtain a definitive answer as to whether and when the merger between BANA and Countrywide was consummated and directed the parties to prepare an order directing the OCC to provide the answer. However, in view of the court's determination that diversity exists even had the merger not been consummated, the order to the OCC is unnecessary.

10

affidavits and accompanying OCC letters are irrelevant and unfounded. The Declaration and OCC letters are not "redundant, immaterial, [or] impertinent." See Fed. R. Civ. P. 12(f). This evidence, while not sufficient on its own to demonstrate proof of merger, is nevertheless relevant and helpful to the court in determining the status of the merger.

Accordingly, the plaintiffs' motion to strike is denied.

D. Motion to Transfer

Where federal jurisdiction is based on either diversity of citizenship or federal question, a civil action may be brought in a district where a substantial part of the events giving rise to the claims occurred. 28 U.S.C. § 1391. Here, pursuant to 28 U.S.C. § 1391, venue is proper in the Central District because a substantial part of the events giving rise to the claims occurred there. The FAC alleges that defendant's conduct emanated from its headquarters and principal place of business in the Central District, and that defendant created, approved, disseminated, and sold the loans in the Central District. FAC ¶ 5. The Central District is the location of a substantial portion of the defendant's conduct involving option ARM loans; accordingly, it is a proper forum.

Courts apply a multi-factor balancing test to determine if transfer would serve the convenience of the parties and witnesses, and would be in the interest of justice. See Jones, 211 F.3d at 498-99. The assessment is conducted in light of the substantial weight afforded to plaintiff's choice of forum. Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). Factors relevant to this case that the court may consider include:

(1) Plaintiff's choice of forum;

(2) Convenience of the parties;

(3) Convenience of the witnesses;

(4) Relative ease of access to the evidence;

(5) Familiarity of each forum with the applicable law;

(6) Feasibility of consolidation with other claims;

11

(7) Any local interest in the controversy; and

(8) The relative court congestion and time of trial in each forum

Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986).

Turning to the section 1404(a) factors, the court will accord plaintiffs' choice of forum some weight, because even though the plaintiffs represent a class, see Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (plaintiff's choice of forum is given less weight when plaintiff represents a class), Moscoso, one of the three plaintiffs, resides in the Northern District of California ("Northern District") and therefore has significant contacts with this district, see id. (if plaintiff represents a class, court must look to whether the operative facts occurred within the forum and whether the forum has an interest in the parties or subject matter; if not, plaintiff's choice is entitled to minimal consideration). The Northern District has an interest in the controversy because one of the plaintiffs resides within this district, but there are no other substantial ties to this particular district. Thus, plaintiffs' choice of forum is entitled to some deference, although not a significant amount.

The next factor, convenience of the parties and witnesses, favors transfer. Two of the three plaintiffs are residents of the Central District, and those plaintiffs brought almost identical claims in the Central District and litigated them there for two years. Thus, The Central District will be a more convenient not less convenient forum for those plaintiffs. Moreover, the FAC alleges that the majority of the defendant's conduct occurred in that district; thus, any witnesses aside from the plaintiffs themselves will be located in or near that district. With respect to Moscoso, the plaintiff who resides in the Northern District, the Central District is only a short flight from Northern California. Moreover, the remaining class members will be located throughout California and therefore have no particular ties to either district. Plaintiffs' arguments that any depositions can be divided between the Northern and Central Districts, and that documents can be reproduced here, do not weigh heavily in favor of transfer, as that is true in most cases. And finally, plaintiffs' counsel's suggestion that the location of his and co-lead counsel's offices in the Northern District

should weigh against transfer, is rejected, as the convenience of counsel is not an appropriate consideration for the court.

Turning to the ease of access to evidence factor, any documents and tangible evidence defendant used in developing and selling its loan products are presumably located at its facility in the Central District.  Plaintiffs allege in the FAC that this facility is defendant's principal place of business and they rely on this allegation to support their motion to remand.  Defendant does not appear to contest this allegation in the context of the motion to transfer, but argues that based on plaintiffs' own allegations, the bulk of the conduct at issue occurred in the Central District.  Therefore, these factors favors transfer.

Regarding both districts' respective local interests, the Northern District has an interest in this controversy because Moscoso is a resident here, and because the loans were allegedly sold throughout the entirety of California.  However, the Central District has a stronger interest because the defendant's principal place of business is located there, and because many of the events giving rise to this action occurred within that district. Moreover, as noted above, two of the three plaintiffs reside in the Central District. Accordingly, this factor favors transfer as well.

Furthermore, while the parties argue back and forth regarding which district's docket currently contains more cases in which Countrywide is a party, both the Central and Northern Districts are equally capable of hearing this case and determining the issues and relevant California and/or federal law.  However, as defendant argues, it will be more expedient for the case to proceed in the Central District, as Judge Stotler presided over the plaintiffs' previous and almost identical case against Countrywide for two years.  Therefore, Judge Stotler is already familiar with the parties and the particular facts of a substantially similar case, which will help expedite the case and conserve judicial time and resources. Thus, this factor favors transferring the case to the Central District.

Finally, defendant notes that according to statistics, the Central District will be able to resolve the case more quickly than the Northern District, due to the relative court

13

congestion of the two districts. This factor, combined with the fact that one Central District judge is already familiar with the factual and legal issues raised by this complaint, weighs in favor of transfer. Accordingly, the court grants defendant's motion to transfer this case to the Central District of California.

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiffs' motion to remand and motion to strike and GRANTS Countrywide's motion to transfer. In view of the imminent transfer of this action, the court declines to hear defendant's motion to dismiss. Moreover, the court also DENIES plaintiffs' motion for jurisdictional discovery noticed for hearing on November 4, 2009 and motion to shorten time within which to hear that motion in view of the rulings contained herein.

**IT IS SO ORDERED.**

Dated: November 16, 2009

PHYLLIS J. HAMILTON
United States District Judge